PARKVIEW BUILDING & LOAN ASS'N v. HEROLD, Collector of
United States Internal Revenue.

(District Court, D. New Jersey.   March 12, 1913.)

1. INTERNAL REVENUE (§ 9*)—CORPORATIONS—TAXES—BUILDING AND LOAN ASSOCIATION—ASSOCIATION ORGANIZED AND OPERATED EXCLUSIVELY FOR "MUTUAL" BENEFIT OF MEMBERS.

Where a building and loan association was organized under New Jersey Act April 8, 1903 (P. L. p. 457), and supplemental acts solely for the purpose of making building loans to its members, who were entitled to vote in the management of the association's affairs according to membership and not by virtue of stockholding, it was an association for the mutual benefit of its members, within Corporation Tax Law (Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 [U. S. Comp. St. Supp. 1911, p. 946]), exempting such corporations from liability for the taxation, though under its plan of operation there might be inequality in the returns to the prepaying stockholder, etc., since the word "mutual" is not to be construed as synonymous with "equal."

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 5, p. 4646.]

2. TAXATION (§ 204*)—EXEMPTIONS—CONSTRUCTION OF STATUTE.

A citizen is exempt from taxation, unless the tax is imposed on him by clear and unequivocal language; any fair doubt being determined in favor of the taxpayer.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 321, 322, 325, 332, 333; Dec. Dig. § 204.*]

Action by the Parkview Building & Loan Association against Herman G. H. Herold, Collector of United States Internal Revenue for the Fifth District of New Jersey, to recover certain corporation taxes alleged to have been wrongfully imposed on and collected from plaintiff.   Judgment for plaintiff.

Riker & Riker and Spaulding Frazer, both of Newark, N. J., for plaintiff.

John B. Vreeland, of Norristown, N. J., and Harrison P. Lindabury, of Newark, N. J., for defendant.

ORR, District Judge (specially presiding).   The plaintiff has brought its action at law to recover from the Collector of Internal Revenue for

---

the Fifth District of New Jersey the amount of the tax which, plaintiff says, was wrongfully exacted. The tax was assessed under the act providing for a special excise tax on the business of corporations, which is found in Act Aug. 5, 1909, c. 6, 36 St. at Large, pt. 1, p. 112 (U. S. Comp. St. Supp. 1911, p. 946). The question to be determined is whether or not the plaintiff is one of the organizations excepted by the proviso of that statute. The material portions of the act and the proviso are as follows:

"Sec. 38. That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association: * * * Provided, however, that nothing in this section contained shall apply to labor, agricultural or horticultural organizations, or to fraternal beneficiary societies, orders or associations, operating under the lodge system, and providing for the payment of life, sick, accident and other benefits to the members of such societies, orders or associations, and dependents of such members, nor to domestic building and loan associations, organized and operated exclusively for the mutual benefit of their members, nor to any corporation or association organized and operated exclusively for religious, charitable or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual."

[1] At the suggestion of counsel for both parties and in pursuance of their agreement, the court found the following facts in the nature of a special verdict:

"That the plaintiff is a building and loan association existing under and by virtue of the provisions of an act of the Legislature of the state of New Jersey entitled 'An act concerning building and loan associations,' approved April 8, 1903 [P. L. p. 457], and the acts supplementary thereto and amendatory thereof; that said association was in existence under the provisions of said act on the 1st day of January, 1909, and continuously hitherto; that said association issues two varieties of stock, one known as prepaid stock, on which the full par value of $200 per share is paid by the holder thereof at the time of the issuance of said stock, and upon which the plaintiff pays to the holder thereof out of the profits of the association the sum of 5 per cent. per annum in lieu of participation by said stockholder in the general profits of said association, in accordance with the provisions of the fifty-third section of said act concerning building and loan associations; the second, stock known as installment stock, whereon the holders pay the sum of $1 per share per month, and whereto the proportionate share of the profits of the association, after the deduction of the necessary expenses of operation of the association, are annually added until the aggregate of the payments and profits equals the sum of $200, when said sum of $200 is paid to the holder of said shares, and said shares retired; that the plaintiff is at liberty at any time, upon 30 days' notice, to cancel any outstanding prepaid stock upon paying to the holders thereof the par value thereof, together with interest at the rate of 5 per cent. per annum from the date of the last payment of interest to the holder, and each holder of such prepaid stock may likewise, upon 30 days' notice and the tendering of his certificate, require such payment from the association.

"That said association borrows no money from individuals, whether members or nonmembers, loans no money to persons other than members of the association, but borrows from time to time as its business demands moneys from the Essex County National Bank of the city of Newark in amounts not in excess of the amount which it is permitted to borrow under said act concerning building and loan associations.

"That the rights of the two classes of shareholders are in all respects identical, except as to the participation in the profits of the association, as

above set forth; that the profits of the Parkview Building & Loan Association during the year 1909 and subsequently thereto have been in excess of 5 per cent. per annum.

"That said association claimed to be exempt from making the return required by the special corporation excise tax law of 1909, and made no return for the year of 1909, as required by said law, prior to the 1st day of March, 1910; that a return was subsequently made under protest, and that a tax was levied against said association for the year 1909 amounting to $47.36, to which 50 per cent. of such tax, amounting to $23.68, was added, making a total of $71.04; that said tax was paid by the plaintiff under protest, and a petition for its refund was filed by the plaintiff with the Commissioner of Internal Revenue, which petition for refund was denied; that the plaintiff has taken all necessary steps precedent to its right to sue in this court for the recovery of the tax so paid, if said tax was wrongfully exacted."

It is necessary to refer to the New Jersey Act of 1903, under which the plaintiff was incorporated, in order to ascertain its real nature. The first section provides:

"Upon executing, recording and filing a certificate pursuant to this act nine or more persons, citizens of this state, may become an incorporated association for the purpose of assisting each other and all who may become associated with them in acquiring real estate, making improvements thereon and removing incumbrances therefrom, by the payment of periodical installments, and for the further purpose of accumulating a fund to be repaid to its members (subject to the right of earlier redemption), who do not obtain advances for the purposes above mentioned when the funds of such association shall amount to a certain sum per share to be specified in the certificate of incorporation."

We notice that the fifth section provides that:

"Members of the association shall be those to whom its shares shall be issued and their personal representatives and those to whom said shares may be transferred under the regulations prescribed by the association, subject to the making of the periodical payments required and compliance with the other terms of membership according to the constitution and subject to such fines or penalties as shall be determined by the constitution; minors and parents or guardians in behalf of their minor children or wards may hold shares in any such association and have all the rights and privileges of other members except the right to hold office; * * * at all meetings of the association, each member shall be entitled to one vote, * * * provided a minor under the age of sixteen years shall not have the right to vote."

Section 24 provides:

"The funds of every such association shall be invested in the following and no other way: First, in the purchase of lands or building lots and erecting buildings and improvements thereon, or in the purchase of lands already improved, which lands, buildings and improvements shall be within this state, and shall be already contracted to be sold to the members of such association, payable in the shares of the association, or in periodical installments for a period such as shall be agreed upon and designated in their constitution, at the expiration of which term, all payments having been made, the lands, dwellings and improvements so sold and conveyed to the members of such association shall become the property of the grantee discharged from all further payment."

The next provision provides for investment in loans to members on bonds secured by mortgage, which shall be a first lien on real estate, etc. Then follows the third provision for investment in the redemption of shares in the association. Then follows a provision for investment of moneys not required for the three purposes above mentioned

in loans to persons not members upon real estate security, and in the acquisition, by purchase or otherwise, of such securities as savings banks in the state are authorized to take as investments.

The fifty-third section of the act provides:

"All shares of stock issued by any such association of this state, or doing business therein, shall be of the same par or maturity value. No such association shall issue preferred or other than common stock, and all shareholders shall occupy the same relative status as to debts and losses of the association; but nothing herein shall forbid agreements with shareholders who pay the full par or maturity value of their shares in advance whereby they may waive participation in the general profits of the association in consideration of a fixed annual profit."

Other provisions in the act need not be set forth. There are provisions limiting the amount to be paid for the expenses of operation and provisions for state supervision and control. The act contains other provisions regulating foreign building and loan associations who may seek to do business in the state.

The plaintiff is clearly a domestic building and loan association. If, therefore, it be "organized and operated exclusively for the mutual benefit" of its members, it would seem to come within the proviso of the statute. It will be observed that under the law each member has the same right to dictate the policy of the association. It does not increase his influence to own many shares of stock, because his right to vote does not depend upon the number of shares that he may hold, but simply upon his membership. There is therefore in the association, under the law, no means by which a single stockholder, or a group of stockholders, by the acquisition of the majority of the shares, could control the association as against a majority of the members of the association. There is therefore a mutuality of right with respect to the control of the corporation. Nor do we think that the mere provision in the fifty-third section of the act for agreements to pay 5 per cent. interest to shareholders who pay the full par or maturity value of their shares affects the mutuality. It is not contemplated by the act that the shareholders who pay in advance shall have any priority in distribution of assets. There is therefore mutuality between the shareholders with respect to the assets of the corporation. Each person intending to become a member of the association has the right to prepay the full par or maturity value and take a fixed sum as his share of the annual profits of the association. The mere fact that there may be an inequality in the returns to the prepaying shareholder and the other shareholder in favor of the one or the other does not seem to the court to destroy the mutuality among the shareholders required by the proviso of the act of Congress.

The word "mutual" cannot always be considered a synonym of "equal." Mutual credits are not necessarily equal credits; mutual debts need not be equal in amount. That the issuance of prepaid shares does not destroy the mutuality among the members of a building and loan association is the opinion of Judge Endlich, whose work on Building and Loan Associations is deemed an authority, as may be seen in his discussion of the subject in paragraphs 461 to 464. That view is also taken by the Supreme Court of Pennsylvania in Folk v.

State Capitol Savings & Loan Association, 214 Pa. 529, 63 Atl. 1013, where the Supreme Court affirms the lower court, which was presided over by Judge Endlich. The following quotation from Judge Endlich's opinion in that case is helpful. He says (214 Pa. 535, 63 Atl. 1016):

"That the allowance of a fixed dividend upon such paid-up stock out of the profits of the corporate business is a reasonable incident to its issuance, just to both classes of shareholders, and not calculated to give either an undue advantage over the other; that, on the contrary, the practical effect of the concurrent issuance of both installment and full-paid stock is likely to prove beneficial to both classes of shareholders; that no essential characteristic of the building association scheme can be regarded as forbidding, and no essential purpose of it as defeated by this device; that it is contrary to no accepted rule of policy applicable to or involved in the nature of building associations."

[2] If the consideration thus given to the case still leaves the matter in doubt, there should be applied the well-settled rule that the citizen is exempt from taxation, unless the same is imposed by clear and unequivocal language, and that, if there is a fair doubt as to the construction of an act imposing taxation, the doubt should be resolved in favor of those upon whom the tax is sought to be laid. This rule is referred to, with citation of several cases, in the opinion of Judge Cross in Mutual Benefit Life Ins. Co. v. Herold (D. C.) 198 Fed. 199. We must conclude, therefore, that the plaintiff must be deemed to have been "organized and operated exclusively for the mutual benefit" of its members.

A decision has been cited in behalf of the government apparently holding a view contrary to that herein expressed. It is the case of Pacific Building & Loan Association v. Millard T. Hartson, and found in 24 Treasury Decisions, No. 6; but that case does not appear to be applicable. The shareholders in that association voted for the directors by the share, thereby affording opportunity for a few individuals, by the acquisition of shares, to control the policy of the corporation. The funds of that association appear to have been a subject of loans to any borrower, without respect to membership in the association; and there was a provision for the cancellation of outstanding certificates of stock not borrowed upon whenever the board of directors deemed advisable to pay the holder the book value of the stock so canceled. In almost every aspect the case cited on behalf of the Collector is not applicable to the present case.

We might add that it is unnecessary to determine the effect of the words at the end of the proviso in the act, "no part of the net income of which inures to the benefit of any private stockholder or individual." The plaintiff is entitled to judgment on the special verdict; and it is therefore so ordered.

And now, March 11, 1913, the clerk is directed to enter judgment for $71.04 in favor of the plaintiff, the Parkview Building & Loan Association, and against the defendant, Herman C. H. Herold, Collector of United States Internal Revenue for the Fifth District of New Jersey.